IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| WESLEY ALAN LIVINGSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:12-cv-00055 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Pleadings.[2] Docket No. 11. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Although Plaintiff has entitled his document "Motion for Judgment on the Pleadings," the Court will construe it as a Motion of Judgment on the Administrative Record.

1

Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed his applications for DIB and SSI on January 27, 2009, alleging that he had been disabled since July 15, 2008, due to dwarfism, autism, and depression. Docket No. 9, Attachment ("TR"), TR 51, 52, 124, 131, 176.[3] Plaintiff's applications were denied both initially (TR 51, 52) and upon reconsideration (TR 53, 54). Plaintiff subsequently requested (TR 71) and received (TR 81) a hearing. Plaintiff's hearing was conducted on August 12, 2010, by Administrative Law Judge ("ALJ") Frank Letchworth. TR 27. Plaintiff, vocational expert ("VE"), Julian Nadolsky, and witness for Plaintiff, Michael Livingston, appeared and testified. *Id.*

On September 30, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 25. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since July 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: learning disorder; depression; and organic brain syndrome (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination

---

[3] Plaintiff's applications for SSI and DBI were filed on February 9, 2009. TR 124, 131.

                of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to direct nonconfrontational supervision and to jobs that require no high stress production rates or quotas.

6. The claimant was born on December 20, 1975 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 20-25.

On October 18, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 14. On April 4, 2012, the Appeals Council issued a letter declining to review the case (TR

1), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

4

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[4] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed to properly: 1) evaluate Plaintiff's residual functional capacity, and 2) consider the vocational expert's testimony. Docket No. 12. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Residual Functional Capacity**

Plaintiff maintains that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence. Docket No. 12 at 6. Specifically, Plaintiff argues that his restrictions in social functioning are far more severe than those found by the ALJ. *Id.* Plaintiff argues that he is unable "to respond appropriately to supervision, coworkers, and usual work situations," which is a requirement to be able to perform unskilled work. *Id.* at 6-7, *citing* SSR 85-15. As support for his assertion, Plaintiff notes his testimony, the testimony of his father, and his work and school records. *Id.* at 7. Plaintiff concedes that evidence regarding his inability to get along with supervisors and co-workers is inconsistent, and that some of Plaintiff's own testimony and the medical opinion of consulting examiner, Mr. Stephen Hardison, do not support severe limitations in social functioning. *Id.* at 8, *referencing* TR 29-45, 256-76, *citing* TR 288-91. Plaintiff contends, however, that these inconsistencies should not provide a basis for discrediting the severity of his limitations in social functioning because: 1) Plaintiff's own testimony is not credible given his limited ability to understand the nature of his interaction with others, and 2) it is questionable whether Mr. Hardison considered the other evidence of record when rendering his opinion. *Id.* at 7-8, *citing* TR 263, 288-91. Plaintiff contends that the ALJ failed to recognize that he was not a reliable witness when he accepted Plaintiff's testimony at

8

face value, rather than considering the "more reliable" evidence of Plaintiff's work and school records, and the testimony of Plaintiff's father. *Id.* at 8. Plaintiff further contends that it appears that Mr. Hardison based his opinion on his interview with Plaintiff, but, as has been argued, Plaintiff's autism renders him an unreliable witness. *Id.* Plaintiff asserts that Mr. Hardison's basing his opinion on his interview with Plaintiff renders his opinion, "at best, an incomplete picture of the depth of the Plaintiff's social difficulties." *Id.* at 8-9. Ultimately, Plaintiff articulates that because Plaintiff has "substantial limitations in relating to supervisors, co-workers, and the public at large," the ALJ should have found Plaintiff to be disabled. *Id.* at 9.

Defendant responds that the ALJ properly evaluated Plaintiff's RFC. Docket No. 13 at 12. Defendant argues that the ALJ's determination was consistent with the medical opinions of record, including with State Agency psychologists Mr. Hardison and Dr. Edward Sachs, and with State Agency psychiatrist Dr. Pilar Vargas. *Id.* at 12-13, *citing* Docket No. 12 at 8, TR 267, 288-91, 292-308, 314-16, 318-30, *referencing* TR 21-23. Defendant notes that Mr. Hardison's opinion was consistent with Plaintiff's school records, including the opinion of school psychologist, Barbara Sullivan, who noted in 1994 that Plaintiff was "much higher functioning than most individuals with autism." *Id.* at 13, *quoting* TR 267. Defendant also notes that, when making his RFC determination, the ALJ adequately considered Plaintiff's work history and hearing testimony. *Id.* at 13-14, *citing* TR 23, 32, 33-34, 37. Finally, Defendant notes that in light of inconsistent evidence, it is solely the ALJ's responsibility to make an RFC determination. *Id.* at 14, *citing* 20 CFR §§ 404.1546(c), 416.946(c).

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of

9

jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

The ALJ, in the case at bar, after evaluating all of the objective medical evidence of record and Plaintiff's reported level of activity, determined that Plaintiff retained the RFC to perform a full range of work with "direct nonconfrontational supervision" and "no high stress production rates or quotas." TR 21. In making this determination, the ALJ considered the hearing testimony, medical records, school evaluations, medical source statements, and Plaintiff's subjective complaints. TR 21-23.

The ALJ first considered testimonial evidence of record:

> The claimant testified that his only income is food stamps and said his father paid his house payment. The claimant stated that he can read a newspaper and has a high school education. The claimant stated that he had problems due to autism and dwarfism. He reported that he worked as a maintenance man on a locomotive and as an electrician's helper.
>
> The claimant's father, Mr. Mike Livingston, testified on behalf of his son and reported that he pays his son's bills. He asserted that the claimant's small stature and autism posed severe difficulties with the claimant obtaining and maintaining employment. His father said that his son becomes extremely nervous when he is working and sometimes becomes angry, yells, and loses his

> temper. He stated that his son is overly sensitive to any criticism
> and becomes withdrawn, touchy, and grumpy.

TR 22, *referencing* TR 30-45.

The ALJ next discussed the objective medical evidence and medical opinions of record, stating:

> The medical evidence reveals that a school psychological evaluation of the claimant was performed in June 1994. Medical records show that he was diagnosed with achondroplasia dwarfism at 18 months with evidence of delays in gross motor and speech and language. The claimant was assessed with autism affecting his ability to relate to people, events, and objects. The claimant was observed to exhibit difficulties with speech and language communications and to respond inconsistently with sensory stimuli, such as sight, hearing, taste, and touch. He participated in special education classes in an effort to improve his language skills.
>
> Dr. Balger examined the claimant in 2000 and assessed him with dwarfism; mild anxiety; and autism with high-functioning abilities. A follow-up note in 2002 shows that his parents reported to the physician that the claimant preferred not to take prescribed anti-psychotic medications.
>
> Mr. Hardison, M.A., consultatively performed a psychological evaluation of the claimant who reported that he currently did not take any prescribed medications although he said that he previously had been prescribed Prozac in 2004. The WAIS-IV, intelligence tests, were performed, and the claimant obtained a full scale IQ score of 84, placing him in the low average range of intelligence. Achievement tests, the WRAT-IV, were also given, and the claimant obtained a reading score of tenth grade and an arithmetic score of eighth grade. The examiner observed that such scores showed that the claimant was functionally literate with basic word recognition skills. While the claimant professed that he was depressed, the examiner averred that he did not meet the criteria for a specific diagnosis of depression and he also did not currently exhibit symptoms that would indicate autism.

TR 22-23, *referencing* TR 225-30, 231-55, 256-76, 279-86, 287-91.

Finally, the ALJ considered Plaintiff's subjective complaints:

> The degree of the claimant's complaints of pain is not considered fully credible. The undersigned notes that the claimant is a nice young man who apparently has worked at SGA level despite his congenital dwarfism and long-term autism. The claimant testified that he received *no special treatment or accommodations* in several long-term jobs during the period of 1997 through 2007. The objective medical evidence of records shows that no treating or examining source has offered an opinion disabling him, and he has not attempted to obtain low or no-cost mental health therapy while in Tennessee. The claimant admitted that his electrician helper job ended in 2007 due to *lack of work* rather than for any medical or performance issues and asserted that he attempted to draw unemployment benefits after losing his job at Ryan's Restaurant and such would connote that he was willing, able, and available to look for and perform work activities. The claimant cares for his personal needs and for those of his dog. He performs all normal household chores, such as cooking, cleaning, laundry, vacuuming, and sweeping. He enjoys the outdoors and frequently walks to the park or drives his car to the grocery store on a daily basis. He enjoys watching television; working on the computer; visiting with his parents; mowing his lawn; and participates in Model Railroad Club twice weekly. His ability to perform such a variety of daily activities tends to negate the credibility of his subjective complaints, especially the degree of pain he maintained he experiences. One would not reasonably anticipate that a person who experiences substantial drowsiness and side effects from medications, the degree of pain alleged, or severe depression and anxiety, to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities.

TR 23, *referencing* TR 30-41, 149-56, 175-84 (italics in original).

As has been noted, ultimately, the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but being limited to direct, nonconfrontational supervision and to jobs that required no high stress production rates or quotas. TR 21.

Discussing his RFC determination generally, the ALJ stated:

> This is consistent with the medical source statements of the State Agency psychologists who noted no more than mild to moderate mental limitations that were not so severe as to compel the claimant to seek professional mental health treatment or to even take prescribed anti-psychotic medications from a family physician. Likewise, the consultative examiner did not find more than mild to moderate limitations and averred that he was capable of performing even detailed-type instructions so long as he worked in a low stress environment. It is noteworthy that State Agency physicians found no severe physical impairments.
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

TR 21-22, *referencing* TR 287-91, 306-09, 310-13, 314-17.

Although Plaintiff contends that some of Plaintiff's testimony, Plaintiff's father's testimony, and Plaintiff's work and school records support a determination of more severe social functioning limitations, the quoted passages above demonstrate that the ALJ considered all of this evidence in making his findings. Plaintiff also suggests that the ALJ should not have placed as much emphasis on Plaintiff's own testimony because Plaintiff's autism renders him an unreliable witness, as he is not aware of his own social difficulties. As exemplified above, however, the ALJ found Plaintiff's complaints (including Plaintiff's testimony) to not be fully credible. TR 23. Finally, Plaintiff's argument that the ALJ should not have relied on Mr. Hardison's opinion because it is unclear whether Mr. Hardison considered Plaintiff's entire medical record is unavailing, because the ALJ did considered all the evidence of record, and did

not base his opinion solely on that of Mr. Hardison. Docket No. 12 at 8; TR 21-23. Rather, the ALJ based his RFC determination on the evidence of record, including the hearing testimony of both Plaintiff and his father, medical records, school evaluations, medical source statements, and Plaintiff's subjective complaints. TR 21-23.

The ALJ's determination that Plaintiff retained the RFC to perform a full range of work with "direct nonconfrontational supervision" and "no high stress production rates or quotas" is supported by the record as a whole. TR 21-23. Because the ALJ considered the evidence of record, and substantial evidence supports the ALJ's RFC determination, the ALJ's determination must stand.

**2. VE's Testimony Regarding the Existence of a Significant Numbers of Jobs**

Plaintiff contends that the ALJ failed to properly consider the VE's testimony. Docket No. 12 at 10. Specifically, Plaintiff asserts that the ALJ erred in relying on part of the VE's testimony but ignoring the part of the VE's testimony that indicated that Plaintiff could experience potential problems in maintaining steady employment without "extraordinary accommodations." *Id.* Plaintiff also argues that it was improper for the ALJ to rely on the grid rules despite Plaintiff's nonexertional limitations. *Id.* Plaintiff correctly notes that the ALJ's RFC finding included nonexertional limitations of "direct nonconfrontational supervision" and "no high stress production rates or quotas" (*Id., citing* TR 21), and that the VE testified that an individual with these limitations might have some difficulty getting, and retaining, a job (*Id., referencing* TR 48). Plaintiff contends, however, that the ALJ erred by failing to discuss or elicit further testimony for clarification regarding the VE's testimony that, although there would be jobs that an individual with the limitations expressed in the ALJ's hypothetical question could

14

perform, that hypothetical individual "might have some difficulty getting through the initial phase of the job because of the need for direct and non confrontational supervision." *Id.* Plaintiff contends that, even if the ALJ's determination regarding Plaintiff's social abilities was supported by substantial evidence, the vocational evidence is unclear as to whether Plaintiff would be able to maintain steady employment, and step five of the sequential evaluation process requires that the ALJ prove that Plaintiff could acquire and maintain employment, such that the VE's equivocal testimony that Plaintiff "might" be able to retain a job is inconsistent with the ALJ's determination. *Id.* at 12, *citing Jones v. Commissioner,* 336 F.3d 469, 474 (6th Cir. 2003), *referencing* TR 48.

Defendant responds that the VE's testimony supports the ALJ's finding that there are a significant number of jobs that Plaintiff could perform. Docket No. 13 at 14. Specifically, Defendant argues that the ALJ proffered multiple appropriate hypothetical questions to the VE and that the VE's responses to those hypothetical questions regarding the identification of appropriate jobs were unequivocal. *Id.* at 14-15, *citing* TR 46-48. Defendant contends that the evidence of record, including Plaintiff's work history, further supports the ALJ's finding. *Id.*, *citing* TR 32, 33-34, 37.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not

15

significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In the presence of nonexertional limitations that would preclude the application of the grid rules, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

In the case at bar, the ALJ's hypothetical questions posed to the VE addressed Plaintiff's nonexertional limitations. TR 46-48. The ALJ specifically addressed Plaintiff's limitations with the VE as follows:

> Q      Thank you for that. In the first hypothetical, Dr. Nadolsky, assume the claimant has no physical limitations, no exertional limitations. However, he is limited to performing no more than simple and low level detailed instructions, can have no more than occasional interaction with the public, will perform better in an object focused work setting than in a public setting, can adjust to occasional changes in work settings or routines. With those as the limitations, would the claimant be capable of performing any of the three jobs that you described?
>
> A      He would be able to do I think the road builder, the setting of forms, concrete pouring forms. I don't believe he'd be able to do the other two jobs. I think he could do part of the locomotive job but the cleaning part he couldn't do the maintenance part, but not the total job. [*sic*]

Q       For the sake of this first question, Dr. Nadolsky, let's assume the claimant has no past work experience. The claimant was born in December '75 so he's currently 34 years of age and has a high school education. Would there be other jobs to accommodate such factors?

A       Yes, it would, there would be many jobs the person could perform at different levels, I think for example, at the medium level he could perform jobs such as conveyer feeder, a conveyer off-barrier, and these are all unskilled jobs, he would not have any skills from the work – well, he didn't have work experience based on the hypothetical.

Q       That's right.

A       But I think he can perform the job as a packaging machine tender, could also work in some jobs as a cleaner, could definitely work as a mold cleaner. I think these are examples of the kinds of medium jobs that a person could do and in terms of numbers of these kinds of jobs in the local labor market there's a total of about 800 medium jobs that the claimant could do under that hypothetical. Nationwide there's about one and one-quarter million of the same types of jobs.

Q       All right, and would it be fair to assume that in addition to the medium exertion jobs you've identified there might be additional light and sedentary level jobs as well?

A       Well, there would, the same kinds of unskilled jobs.

Q       Correct, thank you, sir.

A       In fact, there would be greater numbers at the light level but not for sedentary.

Q       That's all I'll need on this hypothetical. Now, next hypothetical, Dr. Nadolsky, assume that in addition to what

> was provided in that first hypothetical, the claimant can have – let me rephrase, let's assume further that any supervision of the claimant must be direct and non confrontational. Let's assume further that the claimant can perform no highly stressful production rate or quota jobs. Would this affect the answer to the previous hypothetical?
>
> A     I don't believe it would affect my answer to the hypothetical, I think he might have some difficulty getting through the initial phase of the job because of the need for direct and non confrontational supervision. He may or may not have difficulty getting through the initial phase.
>
> Q     Well, would there be any jobs that would accommodate the further requirement of direct and non confrontational supervision?
>
> A     Yes, there would be many jobs, I think the kind of jobs that I testified to but he'd also be able to perform other jobs. Examples would be jobs such as a hand sander, a cushion stuffer, a furniture wiper, a decal applier, a gasket inspector, I believe these are examples of the kinds of jobs that are light in nature that a person could perform consistent with that hypothetical.

TR 46-48.

When considering the evidence at step five of the sequential evaluation, including the VE's responses regarding the numbers of available appropriate jobs, the ALJ stated:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The

> vocational expert testified that given all of these factors the
> individual would be able to perform the requirements of
> representative unskilled medium occupations such as conveyer
> feeder, packaging machine tender, and cleaner, such as mold
> cleaner. There are 800 such jobs in the local economy and 1.25
> [*sic*] such jobs in the national economy. The vocational expert also
> listed unskilled light and sedentary jobs that include hand sander,
> cushion stuffer, furniture wiper, decal applier, and gasket
> inspector. There are 1100 such jobs in the local economy and 1.5
> [*sic*] such jobs in the national economy [*sic*]
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is
> consistent with the information contained in the Dictionary of
> Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned
> concludes that, considering the claimant's age, education, work
> experience, and residual functional capacity, the claimant is
> capable of making a successful adjustment to other work that
> exists in significant numbers in the national economy. A finding of
> "not disabled" is therefore appropriate under the framework of
> section 204.00 in the Medical-Vocational Guidelines.

TR 24-25, *referencing* TR 46-49.

Although Plaintiff argues that the VE's responses to the hypothetical questions were equivocal, the VE very clearly testified that "there would be many jobs" that would accommodate Plaintiff's limitations, including his "further requirement of direct and non confrontational supervision." The ALJ's hypothetical questions properly included Plaintiff's exertional and nonexertional limitations, and the VE appropriately and unequivocally listed several jobs that an individual with Plaintiff's limitations could perform. Because the ALJ's hypothetical questions to the VE contained Plaintiff's exertional and nonexertional limitations, the ALJ could rely on the testimony of the VE for evidence of the existence of a significant

19

number of jobs in the local and national economies that Plaintiff would be able to perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge